[Cite as *State v. Terrion*, 2011-Ohio-3800.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

MATTHEW R. TERRION

    Appellant

C.A. No.      25368

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      CR 09 05 1488

DECISION AND JOURNAL ENTRY

Dated: August 3, 2011

---

MOORE, J.

**{¶1}** Appellant, Matthew R. Terrion, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** By April of 2009, the relationship between Terrion and his wife, Cherilyn Terrion, had become rocky. When Mr. and Mrs. Terrion moved back to Ohio from Las Vegas, they purchased a home in Lakewood. Mr. Terrion began a business designing parts for Jeep Wranglers. That business failed and, with the added debt from the Lakewood home, the Terrions were forced to file for bankruptcy in October 2008. Mrs. Terrion began working outside the home while Mr. Terrion served as a stay-at-home dad for their two children. Around the time of the bankruptcy, the couple was forced to move out of the Lakewood home and into Mr. Terrion's parents' house. This created a strain on the marriage. The two began seeing a marriage counselor. Around April of 2009, Mrs. Terrion began spending more time outside the home.

Mr. Terrion became suspicious that she was having an affair. He installed a keylogger program on her computer and discovered her MySpace and Facebook accounts, as well as a Yahoo! personal ad. The personal ad included such statements as "I am attracted to men that can take care of themselves," "a man's-man type of guy, if that helps the description," "I don't want to hold your hand and let you cry. I want to be busy holding other things for you," and "I just don't want a crybaby that needs his momma every five minutes." Her marital status was set as separated and living alone. Mr. Terrion confronted her about it and she said it was old and nothing for him to worry about. On April 1, 2009, he confronted her and asked if she was having an affair. In response, she told him she wanted out of the marriage.

{¶3} Around April 8, 2009, Mrs. Terrion moved into her own apartment in Twinsburg. On April 10, 2009, the Terrions agreed to amicably divorce. However, Mr. Terrion read her lawyer's resolution of the marriage and refused to sign the documents. On April, 13, 2009, she filed for divorce. Mr. Terrion began taking the prescription medication Zoloft. On April 19, 2009, he spoke with her on the phone and read to her a letter that he had typed. In response, she agreed to call off the divorce but wanted to remain in her apartment. Mr. Terrion was ecstatic. Things continued to go well and, on April 27, 2009, Mrs. Terrion dismissed the divorce action. On April 29, 2009, Mr. Terrion placed a pistol and silencer in a box with shoes and took it to her apartment. He testified that he was going to give her the gun and silencer as a gift because it was his favorite gun and the gesture would let her know that she was more important to him than his gun collection. After eating dinner with Mrs. Terrion he bought her a television at Walmart and installed it at her apartment. Afterwards, he used the bathroom, blew his nose and put the tissue in the trash, where he saw wadded up toilet paper and became furious. At trial on cross-

examination Mr. Terrion admitted that he was rooting around in her trash can because he still did not trust her. Inside the toilet paper he found a condom wrapper.

{¶4} At trial, Mr. Terrion explained that when they had used condoms in the past, Mrs. Terrion would wad them up in toilet paper before discarding them. He immediately knew that the reconciliation was a lie and that she had been with someone else. He returned to his truck and retrieved the box with the gun and silencer and set it on the bed. He showed her the condom wrapper and asked her what it was. She told him it was none of his business. He was furious and she was acting defensive. Eventually she told him to leave.

{¶5} He grabbed the gun out of the box; he testified that he just wanted to scare her. He further testified that she grabbed it and it fired. He admitted that he shot her pointblank in the top of the head and killed her.

{¶6} Mr. Terrion then attempted to delay the investigation by taking the shell casing, returning to his parents' home, cleaning himself and the weapon, removing the barrel that attaches to the silencer and reattaching the factory barrel. He also hid the shell casing, keys that he took from Mrs. Terrion's apartment, some ammunition, and the condom wrapper in plastic bags in the attic. When his parents left for work the next day, Mr. Terrion, a former police officer, put on a bullet-proof vest, barricaded the doors and windows, and positioned numerous firearms throughout the house in preparation for a standoff. He then ingested any pills that he could find. Eventually, he was arrested without further violence.

{¶7} On May 19, 2009, the Summit County Grand Jury indicted Terrion on one count of murder in violation of R.C. 2903.02(A), a special felony, a firearm specification to that count, a criminal forfeiture specification to that count, and a firearm muffler or silencer specification to that count, one count of murder in violation of R.C. 2903.02(B), a special felony, also with

firearm, criminal forfeiture, and silencer specifications, one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, and one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree.

{¶8} The charges were tried to a jury from March 9, 2010, through March 12, 2010. On March 12, 2010, the jury returned a verdict of guilty on each count, including the attendant specifications. The court sentenced Mr. Terrion to six years of incarceration on the silencer specification to the murder count under R.C. 2903.02(A), as well as 15 years to life on the murder count under R.C. 2903.02(A). The court merged the additional firearm specification to this count. The court also merged the second murder charge and its specifications. The court further sentenced Terrion to five years of incarceration on the tampering with evidence conviction and 6 months of incarceration on the domestic violence conviction. The court ordered that the sentence on the silencer specification be served first and consecutively to the sentence for murder. The court further ordered that the sentences for tampering with evidence and domestic violence be served concurrently with each other and concurrently with the murder sentence, yielding an aggregate sentence of 21 years to life imprisonment.

{¶9} Mr. Terrion timely filed a notice of appeal. He raises two assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF [TERRION] IN DENYING HIS REQUESTS FOR SPECIFIC JURY INSTRUCTIONS ON INFERIOR DEGREE OFFENSES TO MURDER."

{¶10} In his first assignment of error, Mr. Terrion contends that the trial court erred in denying his request for a jury instruction on voluntary manslaughter. We do not agree.

{¶11} Voluntary manslaughter is not a lesser-included offense of murder. *State v. Shane* (1992), 63 Ohio St.3d 630, 632. This is so because "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements * * *." *State v. Deem* (1988), 40 Ohio St.3d 205, 209. Instead, it is an inferior degree of murder. *Shane*, 63 Ohio St.3d at 632. Voluntary manslaughter, as defined in R.C. 2903.03(A), "permits a defendant to mitigate a charge of * * * murder to manslaughter if the defendant establishes the mitigating circumstances of sudden passion or a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force." *State v. Benge* (1996), 75 Ohio St.3d 136, 140.

{¶12} "Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought." *Shane*, 63 Ohio St.3d at 632, citing *State v. Tyler* (1990), 50 Ohio St.3d 24, 37. That is, the instruction is warranted if "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *State v. Carter* (2000), 89 Ohio St.3d 593, 600.

{¶13} Additionally, before providing a voluntary manslaughter instruction, the trial court must make a determination that "evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Shane*, 63 Ohio St.3d at paragraph one of the syllabus. The inquiry into the mitigating circumstances consists of both objective and subjective components. Id. at 634. The objective component determines whether the provocation in a given case "is reasonably sufficient to bring on sudden passion or a sudden fit of rage[.]" Id. Reasonably sufficient provocation is provocation "sufficient to arouse the

passions of an ordinary person beyond the power of his or her control." Id. at 635. If the objective standard is met, the subjective component involves an inquiry into the "emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time" to determine if he was in fact provoked. (Internal citation omitted.) Id. at 634. If the objective component is not met then the trial court need not conduct a subjective inquiry and a voluntary manslaughter instruction is inappropriate. Id. In evaluating these components, "'[t]he trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence[,]' although the trial court still decides the issue as a matter of law." *State v. Williams*, 9th Dist. No. 24169, 2009-Ohio-3162, at ¶14, quoting *Shane*, 63 Ohio St.3d at 637.

{¶14} In *Shane*, supra, the Supreme Court of Ohio identified several situations that are particularly appropriate for voluntary manslaughter instructions, including "assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery[.]" Id. at 635. The *Shane* Court then declined to state a bright-line rule under which words alone could never cause sufficient provocation but wrote that they would not reasonably provoke deadly force in most situations. Id. at 637.

{¶15} The *Shane* Court further examined the effect of Shane's fiancée telling him of her sexual infidelity. Id. at 638. At the time of the crime, Shane awakened his fiancée and repeatedly asked her questions in an attempt to gain a confession. Id. at 637. She denied his accusations and he accused her of lying. Id. Eventually she admitted her infidelity and he lost control. Id. He murdered her via strangulation, a process that expert testimony described as requiring between one and five minutes to complete. Id. The Court distinguished this from a gunshot that could occur quickly and be immediately regretted. Id. The Court held that, under

the objective standard, no reasonable person would have been sufficiently provoked by the victim's actions. Id.

{¶16} This Court has previously addressed the appropriateness of a voluntary manslaughter instruction under stronger provocation than Mr. Terrion experienced. In *State v. Nelson* (June 13, 2001), 9th Dist. No. 20365, Nelson's wife informed him that she was having an affair with a co-worker. Id. at *2. The co-worker then bragged to Nelson that he slept with his wife "'and you won't forget it and neither will she.'" Id. The next day, Nelson went to the co-worker's workplace, killed him with a shotgun, and scalped him. Id. Noting that timing is irrelevant to the issue of sufficient provocation, the panel assessed only "whether the upsetting event presented a 'reasonably sufficient provocation,' to cause the death of another." Id., citing *Shane*, 63 Ohio St.3d at 634. Concluding that mere disclosure of adultery did not "partially excuse" the killing of her lover, this Court affirmed the trial court's refusal to give a voluntary manslaughter instruction. *Nelson*, 9th Dist. No. 20365, at *2.

{¶17} This case is analogous to *Shane* in that Mr. Terrion did not trust, in this case, his wife, and sought to confirm that she was cheating on him. Before interrogating Mrs. Terrion, as Shane did with his fiancée, *Shane*, 63 Ohio St.3d at 637, Mr. Terrion installed a keylogger program on her computer, discovered her personal ad, and admitted that on the night of her murder he discovered the condom wrapper while rooting through her trash because he did not trust her. Rather than admit infidelity, Mrs. Terrion told him that it was none of his business and asked him to leave. Like Shane, Mr. Terrion created much of his own anger by spying on Mrs. Terrion and then rooting through her trash. Id. Additionally, the *Nelson* case involved much more egregious action on the part of the victim. *Nelson*, 9th Dist. No. 20365, at *2. In that case, the victim specifically taunted the defendant about his wife's infidelity. Id. Nonetheless, this

Court held that Nelson was not entitled to a voluntary manslaughter instruction because the alleged remarks, even if true, did not constitute reasonably sufficient provocation. Id. Even if we accept Mr. Terrion's argument that finding a condom wrapper is closer to witnessing one's spouse in the act of adultery than it is to mere words, it is only incrementally so. Moreover, the fact that the condom wrapper was hidden in toilet paper in a trash can cannot reasonably be considered a confession. On the facts of this case, Mrs. Terrion's conduct was to tell her husband that her activities were none of his business and that he should leave her apartment. This conduct was insufficient to justify a voluntary manslaughter jury instruction. Accordingly, the trial court did not err when it determined as a matter of law that Mr. Terrion was not entitled to a jury instruction on voluntary manslaughter due to insufficient provocation on the part of the victim. *Shane*, 63 Ohio St.3d at 637; *Nelson*, 9th Dist. No. 20365, at *2.

{¶18} Mr. Terrion's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN VIOLATION OF [TERRION'S] CONSTITUTIONAL RIGHT TO DUE PROCESS IN DENYING HIM THE RIGHT TO PRESENT THE TESTIMONY OF ANDREW GOSELIN, AND IN DENYING [HIS] MOTION FOR MISTRIAL AS A RESULT."

{¶19} In his second assignment of error, Mr. Terrion contends that the trial court erred in violation of his right to due process in denying him the right to present the testimony of Andrew Goselin, and in denying his resulting motion for mistrial. We do not agree.

{¶20} "Due process requires only 'that criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶46, quoting *California v. Trombetta* (1984), 467 U.S. 479, 485. The right to due process does not, however, provide defendants with the right to present evidence that is

otherwise inadmissible under the rules of evidence. Id., citing *Taylor v. Illinois* (1988), 484 U.S. 400, 410.

A.     *Relevancy*

{¶21}  "The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *City of Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164. A determination regarding admissibility of evidence is within the sound discretion of the trial court. Id. Under the abuse of discretion standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621.

{¶22}  Mr. Terrion attempted to present the testimony of Andrew Goselin, who, had he been allowed to testify, would have stated that, "He was at the [wife's] house, that he had a Durex condom, that he left the wrapper, he believes either on the floor or on the bedspread when he left. That he took the actual condom with him." After arguments from counsel for each side, the trial court ruled that "this would be duplicative, prejudicial, it is not relevant, it is not material, and the Court, if that's the proffered basis, the Court will, in the interests of justice, preclude this witness from testifying." The trial court further pointed out that, "It is not relevant whether or not, in fact, she had sex with someone and that was, as I said, his condom or Joe Schmo's condom. It doesn't matter who the owner was. It was what Matthew Terrion knew himself, his state of mind, what he knew, not what subsequently was developed in evidence."

{¶23} The trial court was correct in its assessment. Under Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Evid.R. 402, evidence that is not relevant is inadmissible. The defense attempted to call Mr. Goselin after Mr. Terrion testified. Mr. Terrion's testimony did not indicate that he had any knowledge regarding the identity of Mrs. Terrion's paramour, nor did his testimony indicate that he had knowledge of actual infidelity. Based on his understanding of Mrs. Terrion's behavior related to condom use he could reasonably conclude that she engaged in sexual activity with another man. The identity of the man or confirmation of actual sexual activity were each irrelevant to Mr. Terrion's state of mind at the time because he did not have knowledge of anything beyond the existence of the condom wrapper. Because Mr. Terrion only knew of the condom wrapper, Mr. Goselin's proffered testimony that he engaged in sexual activity with the victim would not make Mr. Terrion's knowledge of actual infidelity more or less probable at the time he committed the crime. Accordingly, the trial court did not abuse its discretion in ruling that Mr. Goselin's testimony was irrelevant and inadmissible. Evid.R. 401; *Taylor*, 39 Ohio St.3d at 164.

B. *Denial of Mistrial*

**{¶24}** Mr. Terrion moved for a mistrial as a result of the trial court's exclusion of Mr. Goselin's proffered testimony. "The grant or denial of a mistrial lies within the sound discretion of the trial court. However, a trial court need not declare a mistrial unless the ends of justice so require and a fair trial is no longer possible." (Quotation and citation omitted.) *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, at ¶173. Having determined that the trial court did not err in ruling that Mr. Goselin's testimony was inadmissible, the motion for mistrial predicated on that determination was properly overruled. Further, this ruling did not violate Mr. Terrion's due

process rights because he had no right to present testimony otherwise barred by the rules of evidence. *Hale* at ¶46, citing *Taylor*, 484 U.S. at 410.

{¶25} Mr. Terrion's second assignment of error is overruled.

### III.

{¶26} Mr. Terrion's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.