[Cite as *State v. Howse*, 2012-Ohio-6106.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 12CA010251 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALVERNO M. HOWSE, JR. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 09CR078921 |

DECISION AND JOURNAL ENTRY

Dated: December 26, 2012

MOORE, Presiding Judge.

{¶1}  Defendant-Appellant, Alverno Howse, Jr., appeals his convictions in the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}  On August 19, 2009, Charles "Chuckie" Howard, Jr. was shot and killed in a home rented by Shauda Stark.  During the police investigation immediately following the shooting and in testimony before the grand jury, witnesses at the home placed Appellant in the room with Howard at the time of the shooting.  By the time the case went to trial, some of the witness testimony had changed.  Nonetheless, a jury convicted Appellant of reckless homicide in violation of R.C. 2903.041, a felony of the third degree, and tampering with evidence, in violation of R.C. 2921.13(A)(1), also a third degree felony.  He was also convicted of the attendant gun specifications attached to each charge.  Appellant was sentenced to 13 years in prison. He presents five assignments of error on appeal.

{¶3} Testimony at trial was presented as follows. In the hours before the shooting, Stark, Chuckie, Jeris Nelson, Clyde Anderson, Tony Spraggins, Melissa White, Christopher Howse, and Appellant were all gathered at the house. Stark left to pick up her son from daycare. Stark took Christopher Howse, her boyfriend at the time, and Spraggins with her. Chuckie, Nelson, Anderson, White, and Appellant remained at the house. The witnesses testified inconsistently as to what happened next.

{¶4} Sometime after the group left to pick up Stark's son, White and Anderson went into the main bedroom to talk. According to White, she left the bedroom when she heard loud voices coming from the living room; she then walked into the kitchen. According to Anderson, he left the bedroom with White and walked directly into the bathroom. Nelson remained in the living room, and, according to some statements, Chuckie and Appellant walked back towards the bedroom. White, Anderson, and Nelson then heard a single gunshot, and, according Nelson and White, Chuckie came into the kitchen and collapsed on the floor. When the police arrived, Chuckie, Nelson, Anderson, and White were at the house. Appellant was not, and no gun was ever found.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING APPELLANT HIS RIGHT TO A PUBLIC TRIAL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN IT CLOSED THE COURTROOM BASED UPON ONLY VAGUE CONCERNS FOR WITNESS SAFETY AND GANG ACTIVITY IN THE MIDDLE OF THE TESTIMONY OF ONE KEY WITNESS.

{¶5} In his second assignment of error, Appellant argues that he was denied his constitutional right to a public trial when the court closed the courtroom. We disagree.

{¶6} The Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution guarantee the right to a public trial. *State v. Lane*, 60 Ohio St.2d 112, 119 (1979). "The right to a public trial is rudimentary in our judicial system, but, as with most rights, it is not absolute * * *." *Id.* at 121. It is within the authority of a trial court to order the closure of the proceedings in limited instances. *State v. Evans*, 9th Dist. No. 07CA009274, 2008-Ohio-4295, ¶ 15. In those limited instances the right to a public trial:

> must yield to other interests, such as those essential to the administration of justice. A trial judge has authority to exercise control over the proceedings and the discretion to impose control over the proceedings. Nonetheless, the abridgement of a defendant's right to a public trial may occur only when necessary, and any closure must be narrowly drawn and applied sparingly.

*State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 51. "This Court reviews a trial court's decision to exclude spectators from the courtroom under an abuse of discretion standard * * *." *State v. Powell*, 9th Dist. No. 20067, 2001 WL 1162832, *7 (Oct. 3, 2001). An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Substantial Reason

{¶7} When a trial court orders a partial closure of proceedings, there must be a "substantial reason" to justify the closure. *Drummond* at ¶ 53. Appellant argues that "there were no explicit statements from any witnesses that they were concerned with their safety." Therefore, according to Appellant, there was no substantial reason for the court to close the courtroom.

{¶8} During the State's direct examination of Melissa White, its fourth witness, an altercation occurred outside the courtroom between a prior witness and one of the victim's family members. The courtroom security responded, and the court removed the jury from the

courtroom. The State then requested the court close the courtroom for the remainder of White's testimony and for the upcoming testimony of a confidential informant. The court conducted a hearing on the State's motion.

{¶9} Detective Steven Zacharias, of the Elyria Police Department, testified that he had been informed "by a reliable source that several of the witnesses to this case [were] being intimidated by a gentleman known on the streets as Mook Duke." He went on to explain that he believed Mook Duke to be the street name for Gregory Raymore, the individual responsible for posting Appellant's bail. According to Detective Zacharias, Mook Duke was recruiting individuals to attend the trial to provide "an intimidation factor." Detective Zacharias also explained that the "word [] on the street [was] that there could be problems here in the courtroom and on the street during and after this trial."

{¶10} Detective Larry Barbee and Detective Randall Baker, both of the Elyria Police Department, testified about a group called the Middle Avenue Zone ("MA Zone"), a local gang to which the detectives believed Appellant belonged. Detective Barbee testified that he had noticed several individuals in the back of the courtroom that were known to be involved with MA Zone. Detective Barbee further testified that, based on the change in their testimony and their demeanor, he believed the prior witnesses were intimidated. In fact, two of the State's witnesses had unexpectedly changed their testimony at trial. Their testimony directly conflicted with their prior testimony to the grand jury and subjected them to perjury charges.

{¶11} Deputy Joseph Greiner, assigned to courtroom security, testified that when he responded to a commotion outside of the courtroom, he saw one of the witnesses in an altercation with the victim's step-sister. As he approached, Deputy Greiner heard the witness say, "We rule these streets." This witness testified at trial that Appellant was not present at the

time of the shooting. This testimony was inconsistent with his previous statements to the police and with his testimony to the grand jury.

{¶12} Additionally, Detective Barbee testified that White, in her initial interview, told him that she was concerned about someone coming to her house to shoot her. The trial judge made a special note of how nervous White seemed during her testimony. The judge acknowledged that it is not uncommon for a witness to be nervous, but her nervousness was more than that. White requested time to pause and collect herself, she had a "very pained look on her face," grabbed her stomach on several occasions leading the court to believe she "was nearing nausea," and she had raspy, heavy breathing during her testimony.

{¶13} The court has an interest in maintaining courtroom security and protecting the safety of witnesses. *Drummond* at ¶ 54 (observing the "dangerous nature of gang violence and the genuine need to protect witnesses testifying against gang members from the deadly threat of retaliation"). After reviewing the record, we cannot conclude that the court abused its discretion in finding that there was a substantial reason to close the courtroom.

Partial Closure

{¶14} The closure of a courtroom must be no broader than necessary to protect the overriding interest. *Drummond* at ¶ 52. *Accord Waller v. Georgia*, 467 U.S. 39, 48 (1984). "The [United States] Supreme Court has noted a special concern for allowing a defendant's family members to attend a trial." *Drummond* at ¶ 56. However, the defendant's right to a public trial must be balanced with the administration of justice. *Id*. at ¶ 51. Furthermore, "the presence of the media acts as a safeguard against violations of the Sixth Amendment." *Evans*, 2008-Ohio-4295, at ¶ 19, citing *Drummond* at ¶ 55.

{¶15} Here, the court made two closure orders. For the remainder of White's testimony, the confidential informant's testimony, and, ultimately, for the recalling of a previous witness, the court ordered the proceedings closed to everyone except the parties, the Sheriff's representatives, and one representative from each of the local media (provided they agreed not to publish any identifying information of the witnesses).

{¶16} For the remainder of the trial, the court ordered the number of family members and associates to be limited. From the transcript, it appears that Appellant and the victim's family were asked whom they wanted to have in the courtroom. The court then limited the attendance to those people requested. The record is unclear as to whether the court placed a limit on the number of names allowed.

{¶17} The court only partially closed the proceedings and only prohibited family for a limited number of witnesses. The closure was narrowly tailored to maintain courtroom security and protect the safety of witnesses. *See Drummond* at ¶ 54. Moreover, the media was permitted to remain in the courtroom, and the testimony of the witnesses was made part of the public record. *See Evans* at ¶ 19. *See also Drummond* at ¶ 55.

Reasonable Alternatives

{¶18} The court must also consider reasonable alternatives to closing the courtroom. *Drummond* at ¶ 52. Here, the Sheriff's Department employees informed the court before trial of a concern about tension between Appellant's family and the family of the victim. The decision was made to keep spectators out of the first rows during voir dire and trial, and to control the comings and goings of individuals into the courtroom. The court provided a warning that it "would not tolerate inappropriate conduct, not only in th[e] courtroom, but also on th[e] floor or

in th[e] building." After the altercation outside the courtroom, the court concluded that its warnings were no longer sufficient to protect the proceedings.

{¶19} In its decision to close the courtroom, the court explained that it had also considered other possible alternatives. The court discussed the possibility of concealing the witness' identity, but found that this would obstruct the jury's view of the witness. The court concluded that the members of the jury must be able to view the witness when he or she is testifying so that they can use their observations to decide the witness' credibility.

Findings of Fact

{¶20} Lastly, the court must make findings adequate to support the closure. *Id*. at ¶ 52. The court thoroughly detailed its findings that: (1) two witnesses had changed their testimony to conflict with their prior testimony to the grand jury, and a third witness was coming close to doing the same; (2) the police had received information from a reliable source that a person known as Mook Duke was attempting to intimidate witnesses; (3) White initially expressed fear of being shot, although she later recanted that statement; (4) White exhibited extreme nervousness while testifying, often saying she could not remember details; (5) Appellant was believed to be a member of MA Zone, a gang that had been linked to recent gun violence; (6) Appellant had been shot recently and refused to cooperate with the police in their investigation.

{¶21} After reviewing the record, we cannot conclude that the trial court's decision to partially close the courtroom was arbitrary, unreasonable, or unconscionable. The court had substantial reasons to be concerned about witness intimidation and the safety of the witnesses. Furthermore, because of an altercation between a witness and a member of the victim's family, the court had a reasonable basis for limiting the contact between Appellant's family and friends

and the victim's family and friends. The court did not completely close the courtroom, it considered reasonable alternatives, and made adequate findings to support the closure.

Failure to provide jury instruction

**{¶22}** Appellant argues the court tainted the jury by failing to provide instructions as to why the courtroom was partially closed. Appellant did not request such an instruction at trial. Because Appellant did not raise this issue at trial, it is forfeited on appeal, and Appellant must establish plain error. *State v. Long*, 9th Dist. No. 25249, 2011-Ohio-1050, ¶ 14.

> Under Crim.R. 52(B), [p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be plain within the meaning of Crim.R. 52(B), an error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights. We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Internal citations and quotations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "A trial court's jury instructions must be correct and complete statements of the law." *State v. Wilson*, 9th Dist. No. 25100, 2011-Ohio-4072, ¶ 24. A trial court does not err by refusing to issue an instruction to which a defendant, as a matter of law, is not entitled. *State v. Terrion*, 9th Dist. No. 25368, 2011-Ohio-3800, ¶ 17.

**{¶23}** Appellant makes no argument that he was legally entitled to an instruction explaining to the jury why certain portions of the proceedings were closed. Nor does Appellant argue that the instructions given were incorrect or incomplete statements of the law. Moreover, Appellant acknowledges that he did not ask the court for such an instruction. We cannot conclude that the court erred in not providing the jury with an explanation as to why the proceedings were partially closed.

**{¶24}** Appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE VERDICT IN THIS CASE FINDING APPELLANT GUILTY OF RECKLESS HOMICIDE IN VIOLATION OF R.C. §2903.041(A) WAS BASED UPON INSUFFICIENT EVIDENCE.

## ASSIGNMENT OF ERROR V

THE VERDICT IN THIS CASE FINDING APPELLANT GUILTY OF TAMPERING WITH EVIDENCE IN VIOLATION OF R.C. §2921.12(A)(1) WAS BASED UPON INSUFFICIENT EVIDENCE.

**{¶25}** In his fourth and fifth assignments of error, Appellant argues that there is not sufficient evidence to support his convictions. We disagree.

**{¶26}** "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

**{¶27}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

Reckless Homicide

{¶28} A person is guilty of reckless homicide if he or she recklessly causes the death of another person. R.C. 2903.041. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶29} A confidential informant testified that he had a reputation among the Lorain county jail inmates as being legally savvy and that inmates would often come to him for legal advice. According to the informant, when Appellant first came to speak with him about his case, he had only been charged with tampering with evidence. The informant testified that Appellant was "pretty upset" and wanted to know if he could be charged with murder when "he didn't mean to kill [the] guy * * *. He said that what happened, he had a beef with some people that both of them knew. He wanted to go pop these people. This kid Chuckie didn't want nothing to do with it." According to the informant, Appellant explained that he and Chuckie argued, that he got upset, cocked the gun, and pointed it at Chuckie. The gun then accidentally went off. When the informant asked Appellant why he didn't just call the police, he said that he panicked. The confidential informant further testified that Appellant was "happy" when he was later indicted for reckless homicide "because it wasn't a murder."

{¶30} Detective Barbee testified that he knew Appellant because he was a victim in a prior shooting that Barbee had investigated. According to Barbee, Appellant had been shot twice last year, but no charges were filed because of a lack of cooperation from witnesses. It would

appear, having been previously shot himself, that Appellant was aware of the risks posed by firearms.

{¶31} Viewing the evidence in a light most favorable to the prosecution, there is evidence that Appellant acted with heedless indifference to the consequences, when he cocked a loaded handgun and pointed it at Chuckie while the two argued, and that he "perversely disregard[ed] a known risk that his conduct" would likely cause the death of Chuckie. *See* R.C. 2901.22(C). Appellant's fourth assignment of error is overruled.

Tampering with Evidence

{¶32} A person is guilty of tampering with evidence if he or she, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, * * * alter[s], destroy[s], conceal[s], or remove[s] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶33} The confidential informant testified that Appellant had come to him seeking legal advice while the two were incarcerated in the Lorain county jail. According to the informant, after Appellant explained that he had shot Chuckie by accident, the informant asked him where the gun was, and Appellant responded: "it's gone."

{¶34} Anderson testified that he was in the bathroom when he heard a gunshot. After hearing the gunshot, Anderson said he ran into the kitchen where he saw Chuckie lying, shot on the floor. White and Nelson were also there. Anderson testified that while Appellant was in the

house immediately prior to the shooting, he was no longer in the house when the group was standing in the kitchen.

{¶35} Chuckie was shot in the chest with a gun. Appellant, Chuckie, Nelson, Anderson, and White were in the house at the time of the shooting. Out of that group, none of the others testified to having possessed a gun, and Appellant was the only person to leave the scene. No gun was found at the house.

{¶36} Viewing the evidence in a light most favorable to the prosecution, there is sufficient evidence for a juror to conclude that Appellant removed the gun from the house with the purpose of preventing it from being used in the investigation into Chuckie's death. Appellant's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION FOR RECKLESS HOMICIDE IN VIOLATION OF R.C. §2903.041(A) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

APPELLANT'S CONVICTION FOR TAMPERING WITH EVIDENCE IN VIOLATION OF R.C. §2921.12(A)(1) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶37} In his first and third assignments of error, Appellant argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶38} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387. An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *State v. Prade*, 139 Ohio App.3d 676, 696 (9th Dist.2000).

{¶39} At trial, Jeris Nelson testified that he was in the house when Chuckie was shot, but that Appellant was not. Nelson admitted that this testimony was inconsistent with his prior statements to police and his testimony to the grand jury. In his first statement to the police, Nelson said that he was not inside the house at the time of the shooting, but ran to the house when he heard the gunshot. Nelson later changed his statement to say that both he and Appellant were in the house. In a third interview with police, Nelson again said that both he and Appellant were in the house at the time of the shooting and explained that he lied in his first interview because he was "scared and did not want to cooperate[.]" At the grand jury, Nelson testified that Appellant, Anderson, and Chuckie were in the back bedroom when the gun was fired. Nelson further testified at the grand jury that he was with Chuckie in the kitchen after the shooting when Appellant came in, apologized to Chuckie, and told him it was an accident. At trial, Nelson said that his previous statements to police, and his testimony to the grand jury, were not true and that he was speaking out of fear at the time.

{¶40} Clyde Anderson testified twice at trial. Anderson first testified that Appellant was not in the house at the time of the shooting. He admitted that he had made statements to the police, and testified to the grand jury, that Appellant was present. At the grand jury, Anderson said that Appellant and Chuckie entered the bedroom as he and White were exiting, and upon leaving the bedroom he immediately went into the bathroom, which is where he was when he heard the gunshot.

{¶41} A couple of days after he testified at trial, Anderson voluntarily requested that he be allowed to testify again to tell the jury what he knew. This time, Anderson's testimony was consistent with his testimony to the grand jury. Anderson said that he had gone into the bedroom with White, and as they were leaving the bedroom Appellant and Chuckie were walking in. Anderson went straight into the bathroom, and heard the gunshot shortly thereafter. He ran out of the bathroom into the kitchen, and saw Chuckie lying, shot on the floor. Anderson testified that Appellant was no longer in the house. When Anderson was asked why he testified differently a couple of days before, he explained that he was scared because of several phone calls he had received prior to the trial.

{¶42} Melissa White's testimony was also inconsistent. Most of her testimony was that she could not remember if Appellant was in the house at the time of the shooting. She said that he was there earlier, but wasn't sure if he was still there at the time Chuckie was killed. White agreed that she was sure in her prior statements to the police that Appellant was there, but said that now, at the time of trial, she couldn't remember.

{¶43} A confidential informant testified that Appellant admitted to him that he shot Chuckie by accident. According to the informant, Appellant and Chuckie had gotten into an

argument, Appellant cocked the gun and pointed it at Chuckie, and the gun accidently went off. When the informant asked Appellant where the gun was, Appellant responded that "it's gone."

{¶44} The confidential informant has an extensive criminal record, and he received a plea deal in a pending case for his testimony in this and two other, unrelated cases. In his pending case, the informant was charged with two fifth degree felonies and one felony of the third degree. The State agreed to drop the firearm specifications and recommend a two-year sentence. Further, the informant's girlfriend, a co-defendant, received probation for her pending charges. These facts were provided to the jury for them to consider in evaluating the credibility of the witness.

{¶45} In reaching its verdict, the jury was entitled to believe all, part, or none of the testimony of each witness. *Prince v. Jordan,* 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Notwithstanding the various versions of the events presented by several witnesses, we cannot conclude that Appellant's convictions are against the weight of the evidence. After reviewing the record, this is not the exceptional case which requires reversal. *See Prade*, 139 Ohio App.3d at 696. Accordingly, Appellant's first and third assignments of error are overruled.

III.

{¶46} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

CARLA MOORE
FOR THE COURT


DICKINSON, J.
BELFANCE, J.
CONCUR.


APPEARANCES:

AARON T. BAKER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.