[Cite as *State v. Williams*, 2014-Ohio-971.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No. 12CA010298 |
| | | |
| Appellee | | |
| | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| BRET A. WILLIAMS | | OBERLIN MUNICIPAL COURT |
| | | COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 12CRB00863 |

DECISION AND JOURNAL ENTRY

Dated: March 17, 2014

HENSAL, Judge.

{¶1}    Bret Williams appeals a judgment of the Oberlin Municipal Court convicting him of domestic violence. For the following reasons, this Court affirms.

I.

{¶2}    On August 14, 2012, Mr. Williams and his wife attended a hearing for their divorce proceeding. After the hearing, Wife returned to their house to gather some belongings. As she drove home and collected her things, she talked to her friend Lori Graham on her cell phone. Wife testified that she was nervous about returning to the house because she thought that Mr. Williams might return to it as well after the hearing. She also thought that Mr. Williams would be angry because he had been unable to get a restraining order against her at the hearing.

{¶3}    As Wife anticipated, after the hearing, Mr. Williams also drove to the house. Along the way, however, he stopped and picked up a friend who lived nearby, Robert Bene.

When Mr. Williams arrived at the house, he parked his truck in front of a detached garage that is opposite from the attached garage where Wife had parked.

{¶4} According to Mr. Bene, Mr. Williams told him that he had to get some stuff from the house, so he got out of the car while Mr. Bene stayed in the truck. As Mr. Williams was walking to the door of the house that is inside the attached garage, Wife opened the door to go back out to her car. Wife testified that, when Mr. Williams saw her, he started mocking her. As she scooted around him, he started yelling at her, demanding to know where his van was. She got into the car and locked it as he continued yelling at her. Wife testified that Mr. Williams followed her and punched the driver's window. He held his fingers up to the window "flipping [her] off," made other vulgar gestures, and told her that he was going to "F [her] up" and "F [her] in [her] A." Wife testified that she related some of what was happening to Ms. Graham, but could not recall exactly what she said over the phone.

{¶5} According to Wife, after Mr. Williams left the side of her car, he walked to the door to the house. As he reached it, he turned around and extended his arm at her like he had a gun, saying: "Bang, bang" and "I'm going to F'ing shoot you. You're F'ing dead." Wife testified that his threatening conduct upset and frightened her, so she backed the car out of the garage. Once she had finished backing out, however, she cracked the window to the car and told Mr. Williams: "That's a death threat. You're done. That's a death threat." She ended her call with Ms. Graham and called the sheriff's department.

{¶6} Wife testified that, although she was scared, she did not drive away immediately because the last time she had called the sheriff's department, she was scolded for leaving the scene. She knew that Mr. Williams owns a gun, however, and thought that it might be in his truck, so she decided that she would leave if he started coming towards her. The sheriff's

department, however, told her that she could leave, so she proceeded to the Wellington police station.

{¶7} Ms. Graham testified that she was talking to Wife on the phone when suddenly it seemed like Wife was talking to somebody else. She said that Wife told the other person to "[g]et away from me," so she asked if Mr. Williams was there. Wife confirmed that he was. Ms. Graham testified that Wife began speaking in broken sentences and that she could tell Wife was very scared. Wife's phone became muffled, however, so she could no longer hear much, including anything that Mr. Williams might have said to Wife. Ms. Graham told Wife that, if she felt threatened, she should call 9-1-1, and that she was going to do the same. She, therefore, ended the call and called the sheriff's department. She was describing the incident to the sheriff's department when she learned that Wife had also called the sheriff's department.

{¶8} According to Mr. Bene, when Mr. Williams pulled into the driveway, he saw Wife's car in the attached garage, indicating she was there. He said Mr. Williams got out of the truck and began walking toward the house. When Mr. Bene heard Wife's voice, he got nosy and started watching what was going on behind him through the truck's passenger-side mirror. He had the window open and could hear Mr. Williams ask Wife where his van was. He testified that Wife ignored Mr. Williams's question and got into her car. According to Mr. Bene, he could see at least half of Wife's car and saw that the driver's window of the car was open. He heard Mr. Williams ask about his van again, and heard muffled noises coming from inside the car. He also observed Wife's hands go up at one point as if she had been stung by a bee. Mr. Bene testified that he did not hear Mr. Williams make any other statements to Wife or see him make any inappropriate or threatening gestures at Wife.

{¶9} Wife filed a complaint against Mr. Williams accusing him of domestic violence under Revised Code Section 2919.25(C). Following a trial to the bench, a municipal court judge found him guilty of the offense. Mr. Williams has appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE GUILTY VERDICT FOR DOMESTIC VIOLENCE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. WILLIAMS'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶10} Mr. Williams argues that the State did not present sufficient evidence that Wife believed that she was under threat of imminent physical harm. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶11} Under Section 2919.25(C), "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." With respect to whether Wife believed that Mr. Williams would cause her imminent physical harm, Wife testified that, when Mr. Williams punched the window of the car, "I started thinking he could break them if he wanted to, he's not little, and I

was scared." She also testified that she "believed him when he told me he was going to * * * F me up, and all that hideous stuff, * * * I was in definite fear and I 100 percent believed him." According to Wife, she continued to be in fear after he threatened to kill her because he owns a gun and she did not know its location. She testified that she had difficulty responding to the threats because Mr. Williams's actions caused her to feel "shocked" and "frozen."

{¶12} Mr. Williams argues that Wife's conscious decision to roll down her window and taunt him with her "[y]ou're done" statement and her decision to stay in the driveway while she called the sheriff's department demonstrates that she did not believe his alleged threats. His arguments, however, go to Wife's credibility and the weight of the evidence, not its sufficiency. Viewing Wife's testimony in a light most favorable to the prosecution, we conclude that it presented sufficient evidence that Wife believed Mr. Williams would cause her imminent physical harm. Mr. Williams's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. WILLIAMS'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶13} Mr. Williams also argues that his conviction is against the manifest weight of the evidence. If a defendant asserts that his convictions are against the manifest weight of the evidence:

[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶14} In addition to his previous arguments regarding Wife's credibility, Mr. Williams argues that her allegations were contradicted by Ms. Graham and Mr. Bene. He notes that, while Wife testified that he yelled at her, neither Ms. Graham nor Mr. Bene heard him yell. He also notes that Ms. Graham testified that, when she and Wife were discussing the incident later on the day it happened, Wife speculated that the reason Ms. Graham had not heard Mr. Williams was because he "was speaking lightly." Mr. Williams also notes that Mr. Bene testified that he had a good view of the incident and never saw him make any threatening gestures at Wife.

{¶15} Mr. Williams argues that Wife also had good reason to embellish the facts. He notes that Wife testified that, during the domestic relations hearing, the court had told them that they could both live at their house so long as "things were civil." By the end of the day, she had filed criminal charges against him.

{¶16} The trial judge found Wife's testimony credible. With respect to Mr. Bene's testimony, it found that it was unclear exactly how much he could see through the reflection in the side mirror and whether he had been able to see the front, back, or side of Mr. Williams. It also noted that Wife's conduct caused Ms. Graham to be so concerned about Wife's safety that she called the sheriff's department. It concluded that, even if Mr. Williams did not literally intend to slit Wife's throat or shoot her, his statements and gestures were sufficient to put Wife in imminent concern for her physical well-being.

{¶17} This Court has recognized that "the trier of fact 'is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Maynard*, 9th Dist. Wayne No. 12CA0026, 2013-Ohio-2796, ¶ 23, quoting *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30.

In addition, the trial judge "was entitled to believe all, part, or none of the testimony of each witness." *State v. Howse*, 9th Dist. Lorain No. 12CA010251, 2012-Ohio-6106, ¶ 45.

{¶18} As the municipal court noted, Mr. Bene did not provide much detail with respect to what side of Mr. Williams he could see when Mr. Williams was standing near the window of the car. If it was the back or side then he may not have been able to see any gestures Mr. Williams made or hear what Mr. Williams said to Wife. Ms. Graham was also apparently so alarmed by what she was able to discern over the phone that she ended the call to immediately contact the sheriff's department.

{¶19} Upon review of the record, we cannot say that the trial judge lost his way when he found Mr. Williams guilty of domestic violence. Mr. Williams's second assignment of error is overruled.

III.

{¶20} Mr. Williams's conviction was supported by sufficient evidence and is not against the manifest weight of the evidence. The judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶21} I respectfully dissent, because I believe that Williams' conviction for domestic violence was against the manifest weight of the evidence.

{¶22} I would conclude that the greater amount of credible evidence tends to support Williams' version of the events. *See State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). As I disagree with the trial court's resolution of the conflicting testimony, I believe that Williams' conviction is against the manifest weight of the evidence. *Id*.

{¶23} At trial, Wife testified that Williams screamed at her and banged on her car's windows as she was on a cell phone call with a friend. However, Wife's friend testified that she did not hear any threats or any other sounds indicating screaming or banging. The friend testified that Wife later tried to explain to her that she might not have heard Williams' threats because he "was whispering." It is unreasonable to believe that a person can be screaming and whispering at the same time.

{¶24} In addition, Williams' friend (Mr. Bene) was sitting in Williams' truck parked on the premises near the alleged incident. The truck's windows were open and Mr. Bene's attention was drawn to the parties' interaction out of curiosity. Mr. Bene watched through a side mirror of the truck and testified that he did not hear Williams say anything to Wife beyond two inquiries about Williams' van, and he did not see Williams make any threatening gestures towards Wife. Mr. Bene also testified that Wife's driver's side window was open as the two talked.

{¶25} Furthermore, notwithstanding Wife's testimony that she was afraid that Williams would harm her and that she knew he had a gun and thought it might be in his truck, Wife did not flee the scene. Instead, she remained on the premises and verbally taunted Williams through her open window, informing him that he was "done." There are significant inconsistencies in Wife's description of the incident, for example, that Williams was screaming and only whispering; and that she was afraid that he might shoot her with a gun she believed he had in his truck although she remained on the scene with her window down as she taunted him. Moreover, Wife needed only to continue to share the marital home with Williams so long as their relationship remained civil. Although Wife accused Williams of making a death threat and informed him that he was "done," neither witness heard Williams make any threats to Wife. In addition, despite his focused observations, Mr. Bene did not see Williams make any threatening gestures to Wife. Under these circumstances, I would conclude that the trial court's finding that Wife demonstrated that she was in fear of imminent physical harm was against the manifest weight of the evidence. I would sustain Williams' second assignment of error.

APPEARANCES:

PAUL GRIFFIN, Attorney at Law, for Appellant.

MICHELLE D. NEDWICK, Prosecuting Attorney, for Appellee.