[Cite as *State v. Ivery*, 2018-Ohio-2177.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    28551 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KENAN IVERY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 2014 12 3681 |

DECISION AND JOURNAL ENTRY

Dated: June 6, 2018

HENSAL, Judge.

{¶1}   Kenan Ivery appeals his convictions from the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}   This case involves an altercation at a bar that resulted in the shooting death of an off-duty Akron police officer, as well as several other bar patrons sustaining injuries. We begin our review with a brief recitation of the pertinent facts, summarizing the State's witnesses' testimony.

{¶3}   Tiffany, the manager of Papa Don's Pub in Akron, testified that she and her fiancé, Justin (an Akron police officer), went to Papa Don's the evening of November 15, 2014, to hang out. According to Tiffany, Ann Marie – a bar patron known to Tiffany – approached Tiffany and told her that Kenan Ivery made comments to her that made her feel uncomfortable. According to Ann Marie, Ivery aggressively tried to get her attention because he wanted her to

come over and talk to him. Ann Marie declined his advances and told him she had a boyfriend, who was also in the bar. Ivery then got out of his seat and said "I don't care. I have a 40[,]" which Ann Marie assumed referred to a 40-ounce beer. Ann Marie indicated that she was "creeped * * * out," and that Ivery made her nervous, so she went and sat next to her boyfriend.

{¶4} When Ivery later saw Ann Marie talking to Tiffany, he immediately approached and, according to Tiffany, became angry. Ann Marie went back to her seat and Tiffany tried to calm Ivery down and defuse the situation. Meanwhile, Justin and a bar employee asked Tiffany if she needed assistance, which she declined. Realizing that Ivery was not going to calm down, Tiffany ultimately asked him to leave, and told the bartender to bring Ivery his check and a box for the chicken wings he had ordered. Ivery paid his bill but, according to the bartender, Ivery said "I don't want these fucking wings[,]" and pushed them to the side. As Ivery was walking out of the bar, he stopped to talk to Justin. An employee overheard Ivery tell Justin "I will smack that bitch" two or three times before Ivery exited the bar without further incident.

{¶5} About eight minutes later, Ivery returned to the bar. Tiffany immediately approached him and told him to leave, to which he responded "I'm not alone anymore." This confused Tiffany because she did not see anyone with Ivery. "Big Dave," a regular patron of the bar, walked over and also told Ivery to leave. Ivery then showed Tiffany the barrel of a gun in his waistband. Realizing she needed assistance, Tiffany reached for Justin and told him that Ivery had a gun. Justin stood up from his seat and approached Ivery. Another patron, Dave E., saw Ivery pulling his shirt up, touching the gun in his waistband, and talking to Justin. Dave E. then began walking toward the men and saw Ivery pull the gun out of his waistband. Dave E. grabbed Ivery's right arm in an attempt to take the gun from him. At that point, Ivery was surrounded by Justin, Big Dave, and Dave E., who then shoved Ivery. The four men fell into a

"big dog pile" near the front door and Ivery fired several shots. The shots struck Justin, Big Dave, and two other patrons. The shots also grazed another patron and went through Dave E.'s jacket. Ivery then fled from the scene on foot, and the police and EMS arrived shortly thereafter. Justin later died as a result of the gunshot wounds, but the other injured patrons ultimately recovered from their injuries.

{¶6} Having briefly summarized the State's evidence, we now turn to the evidence presented by the defense. Ivery testified on his own behalf. According to him, he offered to buy Ann Marie a drink several times, which she declined. After Ann Marie told him she had a boyfriend, he told her he "ha[d] a 40 on [him,]" meaning he had a .40-caliber pistol on him, because he felt threatened. As soon as he saw Ann Marie approach Tiffany, he walked over to the women. Tiffany indicated that Ann Marie told her he had called her a derogatory name, which he denied doing. Tiffany then asked him to leave and, after a brief conversation, he started to walk out of the bar. Before exiting, he stopped to talk to Justin because he recognized him from a fundraising event earlier in the night. Ivery then exited the bar, got into his car, and headed home. While on his way home, he realized that he left his chicken wings at the bar, so he returned to get them.

{¶7} Upon entering the bar, Big Dave approached him and told him to never talk to or touch Ann Marie again, and threatened to beat him up. Tiffany positioned herself between Ivery and Big Dave, at which point Ivery lifted his shirt several times to reveal his gun. He then noticed Justin and Dave E. moving toward him, and Big Dave moving closer. At that point, he became fearful because he thought the men were reaching for his gun. As the men were touching and shoving him he began to fall backward and – fearing for his life – he fired several shots. After he fired the shots his gun fell to the ground, so he fled from the scene because he

was afraid someone would pick it up and use it against him. He then ran to a field where the police eventually arrested him.

{¶8} After a multi-day trial, the jury found Ivery guilty of aggravated murder, murder, attempted murder, and felonious assault, as well as the firearm specifications that accompanied those counts. The jury also found Ivery guilty of having a weapon while under disability, carrying a concealed weapon, and illegal possession of a firearm in liquor permit premises. After merging some of the counts and accompanying specifications, the trial court sentenced Ivery to life imprisonment without the possibility of parole for the aggravated murder count, as well as additional sentences for the remaining convictions.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON VOLUNTARY MANSLAUGHTER AND RECKLESS HOMICIDE.

{¶9} In his first assignment of error, Ivery argues that the trial court erred by not instructing the jury on voluntary manslaughter – an inferior degree of murder – and reckless homicide, a lesser-included offense of murder. *State v. Terrion*, 9th Dist. Summit No. 25368, 2011-Ohio-3800, ¶ 11 ("Voluntary manslaughter is * * * an inferior degree of murder.); *State v. Elwell*, 9th Dist. Lorain No. 06CA008923, 2007-Ohio-3122, ¶ 39 ("reckless homicide is a lesser included offense of murder * * *."). We disagree.

{¶10} The test for whether a trial court is required to give a jury instruction on an inferior offense is the same test that is applied when the defendant seeks a jury instruction on a lesser-included offense. *State v. Powe*, 9th Dist. Summit No. 21026, 2002-Ohio-6034, ¶ 57, citing *State v. Shane*, 63 Ohio St.3d 630, 632 (1992). That test requires the trial court to "view the evidence in the light most favorable to the defendant" and determine whether "'sufficient

evidence' [exists] to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" (Emphasis sic.) *State v. Trimble*, 122 Ohio St.3d 297, 325 (2009), quoting *Shane* at 632-633. "[W]hen the evidence presented at trial does not meet this test, a charge on the lesser included (or inferior-degree) offense is not required." *Shane* at 632.

{¶11} At trial, Ivery requested a voluntary manslaughter jury instruction, which the trial court denied. Revised Code Section 2903.03(A) governs voluntary manslaughter and provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." In addition to the above-delineated test – and specific to voluntary manslaughter – "the trial court must make a determination that 'evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.'" *Terrion*, 2011-Ohio-3800 at ¶ 13, quoting *Shane* at paragraph one of the syllabus.

{¶12} "The inquiry into the mitigating circumstances consists of both objective and subjective components." *Terrion* at ¶ 13, citing *Shane* at 634. "The objective component determines whether the provocation in a given case 'is reasonably sufficient to bring on sudden passion or a sudden fit of rage[.]'" *Terrion* at ¶ 13, quoting *Shane* at 634. "Reasonably sufficient provocation is provocation 'sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *Terrion* at ¶ 13, quoting *Shane* at 635. The subjective component involves the "'emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time' to determine if he was in fact provoked." *Terrion* at ¶ 13, quoting *Shane* at 634.

{¶13}   Here, Ivery testified that he fired his gun because he feared for his life when the three men surrounded him and reached for his gun.  He testified that he thought the men would "take it and kill [him,]" so he "defend[ed] [him]self."   He further testified that he "wasn't angry[,]" and repeatedly stated that he was "scared."

{¶14}   As the State points out, this case bears similarities to our prior decision in *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935.  There, the defendant fatally shot the victim and was charged with aggravated murder.  *Id.* at ¶ 2.  At trial, the defendant testified that when he fired the gun, "he was angry and afraid that [the victim] would regain control of the gun and shoot [him]."  *Id.* at ¶ 29.  On appeal, the defendant argued that the trial court erred when it refused to instruct the jury on voluntary manslaughter and reckless homicide.  *Id.* at ¶ 25.  This Court rejected the defendant's argument, concluding that his testimony "demonstrated that he shot [the victim] because he feared [the victim] would have killed or hurt him, not because [the victim] had provoked him into firing the gun due to a fit of rage or sudden passion."  *Id.* at ¶ 29. We, therefore, held that "the trial court did not err by failing to instruct on voluntary manslaughter." *Id.*  This same analysis applies here.  Ivery's testimony indicated that he fired his gun because he was afraid the men would take it from him and shoot him.  We, therefore, cannot say that the trial court erred by refusing to instruct the jury on voluntary manslaughter.

{¶15}  We now turn to Ivery's argument regarding the reckless-homicide instruction. Ivery asserts that the trial court committed plain error by not instructing the jury on reckless homicide because the jury could have found that he acted recklessly when he brought a gun into a crowded bar and fired four shots into the crowd.  Although he cites Criminal Rule 52 ("Harmless Error and Plain Error"), he has not developed any argument in that regard.  We, therefore, decline to address this alleged error.  *State v. Wilson*, 9th Dist. Summit No.  25652,

2011-Ohio-5638, ¶ 16, citing App.R. 12(A)(2) and App.R. 16(A)(7) (holding that the defendant "has not developed a plain error argument, and, thus, we decline to address this alleged error."). In light of the foregoing, Ivery's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION[S] FOR AGGRAVATED MURDER, MURDER, ATTEMPTED MURDER AND FELONIOUS ASSAULT WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND W[ERE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} In his second assignment of error, Ivery challenges the sufficiency and manifest weight of the evidence presented at trial. Specifically, he challenges his convictions for aggravated murder under Section 2903.01, murder under Sections 2903.02(A) and 2903.02(B), and attempted murder under Sections 2923.02 and 2903.02(A).[1] For the reasons that follow, we decline to address Ivery's assignment of error.

{¶17} Appellate Rule 16(A)(7) provides that an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Consistent with this Rule, when "an appellant relies solely on a recitation of the facts without any legal argument, we may disregard an assignment of error." *State v. Jackson*, 9th Dist. Summit No. 27739, 2017-Ohio-278, ¶ 32; *see also State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 28 ("This Court will not construct an argument on behalf of an appellant.").

{¶18} Here, aside from citing the applicable statutes and standards of review for sufficiency and manifest weight, Ivery has cited no authority in support of his assignment of

---

[1] Although the caption of Ivery's second assignment of error lists felonious assault, he did not challenge that conviction in the body of his assignment of error.

error. Indeed, despite challenging each conviction on the basis that the facts indicated that he either acted in self-defense or in a fit of rage after having been provoked, his assignment of error contains no law or analysis relative to self-defense or voluntary manslaughter. Additionally, although he provides citations to the record with respect to his conviction for murder under Section 2903.02(A), he fails to cite the record with respect to the other challenged convictions (i.e., aggravated murder, murder under Section 2903.02(B), and attempted murder). In light of these deficiencies, we decline to address Ivery's second assignment of error.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DENYING A BATSON CHALLENGE WHEN IT IMPROPERLY APPLIED THE THREE STEP PROCESS ESTABLISHED BY THE U.S. SUPREME COURT.

{¶19} In his third assignment of error, Ivery argues that the trial court erred by denying a *Batson* challenge because it improperly applied the three-step process established by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). Because *Batson* was not implicated in this case, we disagree.

{¶20} As an initial matter, we note that under the United States Supreme Court's decision in *Batson*, "a criminal defendant may raise a prima facie case of purposeful racial discrimination in the selection of the jury by showing that he belongs to a cognizable racial group, that the prosecution excluded members of the defendant's race, and that those facts and other circumstances raise an inference that the State used *peremptory challenges* to purposefully exclude members of the defendant's race." (Emphasis added.) *State v. Williams*, 9th Dist. Summit No. 23560, 2008-Ohio-1048, ¶ 9. Here, after the trial had commenced, the State moved to remove an African American juror for cause because monitoring of Ivery's jail calls indicated that the juror approached a woman who had been in the courtroom and inquired about a friend

she was with the day before. The State argued that the juror violated the trial court's admonition to not communicate with anyone in the courtroom. The trial court questioned the juror about the interaction, who initially denied that he had communicated with anyone. After the trial court provided additional information, the juror eventually admitted that he had talked to the woman, but indicated it had nothing to do with the case; he was only inquiring about the woman's friend in a flirtatious manner.

{¶21} The trial court determined that the juror's failure to be forthright with information about the interaction, including the fact that he only admitted to the interaction after the trial court confronted him with additional information, indicated that the juror was "deceptive and that he lied to the Court * * *." The trial court made clear that this was not a preemptory challenge and was "not an issue of race" that implicated *Batson*. The trial court then found that the "juror * * * violated the Court's order about contacting people outside of the courtroom and * * * got caught lying to the Court." It, therefore, removed the juror from the case for that reason.

{¶22} On appeal, Ivery argues that the State failed to provide a race-neutral reason for its preemptory challenge, and that the trial court simply created its own race-neutral reason. As the Ohio Supreme Court has stated, "*Batson* applies only to prospective jurors removed by peremptory challenge." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 158, citing *Batson*, 476 U.S. 79, at 96-98. Here, the State challenged the juror for cause based upon the juror's violation of the trial court's admonition to not communicate with anyone in the courtroom. Moreover, the trial court based its decision to remove the juror on the fact that he lied to the Court and was "more or less caught" doing so. *Batson*, therefore, has no application, and we reject Ivery's third assignment of error.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT
PERMITTED THE STATE OF OHIO TO ELICIT EXPERT TESTIMONY
FROM LAY WITNESSES.

{¶23} In his fourth assignment of error, Ivery argues that the trial court abused its discretion when it allowed the State to elicit expert testimony from a lay witness in violation of Evidence Rule 701. This Court "reviews a trial court's decision pertaining to the admission of evidence under Evid.R. 701 for an abuse of discretion." *State v. Thomas*, 9th Dist. Summit No. 26893, 2014-Ohio-2920, ¶ 23. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In addition to demonstrating that the trial court abused its discretion, Ivery must also show that he was "materially prejudiced" by the trial court's evidentiary ruling. *State v. Martin*, 19 Ohio St.3d 122, 129 (1985); *State v. Harpley*, 9th Dist. Summit No. 22816, 2006-Ohio-2976, ¶ 28 ("[A] court's admission of evidence will not be disturbed absent an abuse of discretion that materially prejudiced the defendant.").

{¶24} Here, Ivery argues that the trial court erred by allowing a detective to testify as to events depicted in a surveillance video that, aside from watching the video as part of his investigation, the detective did not perceive. Ivery also challenges the detective's testimony as it relates to what certain pictures depicted, as well as a timeline of events that the detective created after viewing the surveillance video.

{¶25} Even assuming without deciding that the trial court abused its discretion in this regard, Ivery's merit brief is devoid of any argument as to how the trial court's evidentiary ruling materially prejudiced him. He, therefore, has not established error on appeal. *See* App.R. 16(A)(7). Accordingly, Ivery's fourth assignment of error is overruled.

III.

**{¶26}** Kenan Ivery's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

RHONDA KOTNIK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.