[Cite as *State v. Ivery*, 2020-Ohio-3349.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 28551 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KENAN IVERY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 14 12 3681 |

DECISION AND JOURNAL ENTRY

Dated: June 17, 2020

CARR, Presiding Judge.

{¶1} Kenan Ivery moved to reopen his appeal from his convictions from the Summit County Court of Common Pleas. This Court granted his application, and this matter is now before us for decision. For the reasons that follow, we confirm our prior decision.

I.

{¶2} In *State v. Graves*, this Court explained our obligations in a reopened appeal as follows:

> Under Rule 26(B)(9) of the Ohio Rules of Appellate Procedure, "[i]f th[is] [C]ourt finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, [it] shall vacate its prior judgment and enter the appropriate judgment. If th[is][C]ourt does not so find, [it] shall issue an order confirming its prior judgment." Deficient performance by a lawyer is a performance that falls below an objective standard of reasonable representation. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶ 204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). A defendant is prejudiced by the deficiency if there is a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

(Alterations sic.) 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997, ¶ 9. With those obligations in mind, we now turn to the relevant facts and procedural history of this case.

{¶3} This Court previously set forth the factual and procedural background of this case as follows:

> Tiffany, the manager of Papa Don's Pub in Akron, testified that she and her fiancé, Justin (an Akron police officer), went to Papa Don's the evening of November 15, 2014, to hang out. According to Tiffany, Ann Marie—a bar patron known to Tiffany—approached Tiffany and told her that Kenan Ivery made comments to her that made her feel uncomfortable. According to Ann Marie, Ivery aggressively tried to get her attention because he wanted her to come over and talk to him. Ann Marie declined his advances and told him she had a boyfriend, who was also in the bar. Ivery then got out of his seat and said "I don't care. I have a 40[,]" which Ann Marie assumed referred to a 40–ounce beer. Ann Marie indicated that she was "creeped * * * out," and that Ivery made her nervous, so she went and sat next to her boyfriend.
>
> When Ivery later saw Ann Marie talking to Tiffany, he immediately approached and, according to Tiffany, became angry. Ann Marie went back to her seat and Tiffany tried to calm Ivery down and defuse the situation. Meanwhile, Justin and a bar employee asked Tiffany if she needed assistance, which she declined. Realizing that Ivery was not going to calm down, Tiffany ultimately asked him to leave, and told the bartender to bring Ivery his check and a box for the chicken wings he had ordered. Ivery paid his bill but, according to the bartender, Ivery said "I don't want these fucking wings[,]" and pushed them to the side. As Ivery was walking out of the bar, he stopped to talk to Justin. An employee overheard Ivery tell Justin "I will smack that bitch" two or three times before Ivery exited the bar without further incident.
>
> About eight minutes later, Ivery returned to the bar. Tiffany immediately approached him and told him to leave, to which he responded "I'm not alone anymore." This confused Tiffany because she did not see anyone with Ivery. "Big Dave," a regular patron of the bar, walked over and also told Ivery to leave. Ivery then showed Tiffany the barrel of a gun in his waistband. Realizing she needed assistance, Tiffany reached for Justin and told him that Ivery had a gun. Justin stood up from his seat and approached Ivery. Another patron, Dave E., saw Ivery pulling his shirt up, touching the gun in his waistband, and talking to Justin. Dave E. then began walking toward the men and saw Ivery pull the gun out of his waistband. Dave E. grabbed Ivery's right arm in an attempt to take the gun from him. At that point, Ivery was surrounded by Justin, Big Dave, and Dave E., who then shoved Ivery. The four men fell into a "big dog pile" near the front door and Ivery fired several shots. The shots struck Justin, Big Dave, and two other patrons.

The shots also grazed another patron and went through Dave E.'s jacket. Ivery then fled from the scene on foot, and the police and EMS arrived shortly thereafter. Justin later died as a result of the gunshot wounds, but the other injured patrons ultimately recovered from their injuries.

Having briefly summarized the State's evidence, we now turn to the evidence presented by the defense. Ivery testified on his own behalf. According to him, he offered to buy Ann Marie a drink several times, which she declined. After Ann Marie told him she had a boyfriend, he told her he "ha[d] a 40 on [him,]" meaning he had a .40–caliber pistol on him, because he felt threatened. As soon as he saw Ann Marie approach Tiffany, he walked over to the women. Tiffany indicated that Ann Marie told her he had called her a derogatory name, which he denied doing. Tiffany then asked him to leave and, after a brief conversation, he started to walk out of the bar. Before exiting, he stopped to talk to Justin because he recognized him from a fundraising event earlier in the night. Ivery then exited the bar, got into his car, and headed home. While on his way home, he realized that he left his chicken wings at the bar, so he returned to get them.

Upon entering the bar, Big Dave approached him and told him to never talk to or touch Ann Marie again, and threatened to beat him up. Tiffany positioned herself between Ivery and Big Dave, at which point Ivery lifted his shirt several times to reveal his gun. He then noticed Justin and Dave E. moving toward him, and Big Dave moving closer. At that point, he became fearful because he thought the men were reaching for his gun. As the men were touching and shoving him he began to fall backward and—fearing for his life—he fired several shots. After he fired the shots his gun fell to the ground, so he fled from the scene because he was afraid someone would pick it up and use it against him. He then ran to a field where the police eventually arrested him.

After a multi-day trial, the jury found Ivery guilty of aggravated murder, murder, attempted murder, and felonious assault, as well as the firearm specifications that accompanied those counts. The jury also found Ivery guilty of having a weapon while under disability, carrying a concealed weapon, and illegal possession of a firearm in liquor permit premises. After merging some of the counts and accompanying specifications, the trial court sentenced Ivery to life imprisonment without the possibility of parole for the aggravated murder count, as well as additional sentences for the remaining convictions.

*State v. Ivery*, 9th Dist. Summit No. 28551, 2018-Ohio-2177, ¶ 3-8.

{¶4} In his direct appeal, Mr. Ivery raised four assignments of error, asserting that: (1) the trial court erred by refusing to instruct the jury on voluntary manslaughter and reckless homicide; (2) some of his convictions were not supported by sufficient evidence or the manifest-

weight of the evidence; (3) the trial court erred by denying a *Batson* challenge; and (4) the trial court erred by allowing the State to elicit expert testimony from lay witnesses. This Court held that the trial court did not err by refusing to instruct the jury on voluntary manslaughter, and that Mr. Ivery failed to develop an argument relative to the reckless-homicide instruction. We, therefore, overruled that assignment of error. *Id.* at ¶ 15. We likewise overruled Mr. Ivery's assignment of error challenging the sufficiency and manifest weight of the evidence on the basis that he failed to develop arguments in support of his position. *Id.* at ¶ 18. Regarding his assignment of error related to the *Batson* challenge, this Court concluded that *Batson* did not apply because the trial court removed the juror at issue for cause. *Id.* at ¶ 21-22. We, therefore, overruled that assignment of error. *Id.* at ¶ 22. Lastly, regarding Mr. Ivery's assertion that the trial court erred by allowing the State to elicit expert testimony from lay witnesses, this Court concluded that Mr. Ivery failed to demonstrate how any error in that regard materially prejudiced him. *Id.* at ¶ 25. We, therefore, overruled that assignment of error. *Id.* Having overruled all of Mr. Ivery's assignments of error, this Court affirmed the decision of the trial court. *Id.* at ¶ 26.

{¶5} Mr. Ivery moved for reconsideration, which this Court denied. He then moved for reopening on the basis that his prior appellate counsel rendered ineffective assistance. This Court granted his application. In his reopened appeal, Mr. Ivery has raised four assignments of error and, pursuant to Appellate Rule 26(B)(7), has addressed the claim that his prior appellate counsel rendered ineffective assistance.

II.

ASSIGNMENT OF ERROR I

THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTIONS FOR AGGRAVATED MURDER, MURDER, ATTEMPTED MURDER AND FELONIOUS ASSAULT.

{¶6} In his first assignment of error, Mr. Ivery argues that the State failed to present sufficient evidence to support his convictions for aggravated murder, murder, attempted murder, and felonious assault. His argument in this regard is primarily based upon the State's alleged failure to prove the mens rea for those crimes. He also argues that his prior appellate counsel rendered ineffective assistance by failing to develop this argument in his prior appeal. For the reasons that follow, this Court disagrees.

{¶7} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct a de novo review, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

{¶8} Because Mr. Ivery's challenge to the sufficiency of the evidence is primarily based upon the State's alleged failure to prove the mens rea for his convictions, we begin our analysis by setting forth the required mens rea for those crimes. The jury convicted Mr. Ivery of aggravated murder under Section 2903.01(A), murder under Sections 2903.02(A) and 2903.02(B), attempted murder under Sections 2923.02 and 2903.02(A), and felonious assault under Section 2903.11(A)(2). Aggravated murder under Section 2903.01(A) and murder under Section 2903.02(A) require the State to prove that the defendant acted "purposely[,]" with aggravated murder having the additional requirement that the State prove "prior calculation and design[.]" Murder under Section 2903.02(B) (with the predicate offense of felonious assault) requires the

State to prove that the defendant acted "knowingly[.]" *See State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 43 (stating that "the predicate offense contains the mens rea element for felony murder."); R.C. 2903.11(A)(2). Attempted murder under Sections 2923.02(A) and 2909.02(A) requires the State to prove that the defendant acted "purposely or knowingly[.]" Lastly, felonious assault under Section 2903.11(A)(2) requires the State to prove that the defendant acted "knowingly[.]"

> {¶9} Section 2901.22 defines "purposely" and "knowingly" as follows:
>
> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.
>
> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(A) and R.C. 2901.22(B). "In determining whether a defendant acted purposely, '[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances.'" *State v. Patel*, 9th Dist. Summit No. 24030, 2008-Ohio-4693, ¶ 34, quoting *State v. Sullivan*, 9th Dist. Medina No. 07CA0076-M, 2008-Ohio-2390, ¶ 10. Similarly, "whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." (Alteration omitted.) *State v. Murphy*, 9th Dist. Summit No. 24753, 2010-Ohio-1038, ¶ 15, quoting *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist.2001). The difference between "knowingly" and "purposely" is that "'knowingly' does not require the offender to have the specific intent to cause a certain *result*[.]" (Emphasis sic.) *Murphy* at ¶ 15, quoting *State v. Powell*, 11th Dist. Lake No. 2007-L-187, 2009-Ohio-2822,

¶ 49. That said, "if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." (Alteration omitted.) *Murphy* at ¶ 15, quoting *State v. Dixon*, 8th Dist. Cuyahoga No. 82951, 2004-Ohio-2406, ¶ 16.

{¶10} In support of his assignment of error, Mr. Ivery first argues that the State failed to present sufficient evidence to support his aggravated-murder conviction because the State failed to present sufficient evidence to establish that he acted purposely with prior calculation and design to kill Justin. Section 2903.01(A) governs aggravated murder and provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another[.]" In determining whether a defendant acted "purposely," "[a] jury may infer a defendant's purpose to cause death when the defendant inflicts a wound with a deadly weapon in a manner that appears to be calculated to destroy life or inflict great bodily harm." *State v. Shorter*, 7th Dist. Mahoning No. 11 MA 42, 2012-Ohio-2701, ¶ 16, citing *State v. Stallings*, 89 Ohio St.3d 280, 291 (2000). Relevant to this case, "a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death[.]" *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). Further, as this Court has stated, "'[p]rior calculation and design' denotes 'sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation' coupled with circumstances that demonstrate 'a scheme designed to implement the calculated decision to kill[.]'" *State v. Guerra*, 9th Dist. Lorain No. 12CA010188, 2013-Ohio-5367, ¶ 6, quoting *State v. Cotton*, 56 Ohio St.2d 8 (1978), paragraph three of the syllabus. A prolonged period of deliberation is unnecessary, and "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley*, 93 Ohio St.3d 253, 264 (2001); *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 80. "There is no bright-

line test for determining whether a defendant acted with prior calculation and design, so courts consider the totality of the circumstances in each case," which can include whether the defendant gave thought or preparation to choosing the murder weapon. *Guerra* at ¶ 6, citing *State v. Taylor*, 78 Ohio St.3d 15, 19 (1997).

{¶11} The State presented evidence at trial indicating that Mr. Ivery left the bar after an argument, retrieved a gun, and then returned to the bar about eight minutes later. Upon his return, he told at least one bar patron that he was not alone anymore, and lifted his shirt several times to reveal a gun tucked into his waistband. As Justin and other bar patrons approached him, Mr. Ivery drew the gun from his waistband. A struggle ensued, and Mr. Ivery fired several shots, two of which struck Justin in the torso. Justin later died as a result of those wounds. Viewing the totality of the circumstances in a light most favorable to the State, this Court concludes that a rational trier of fact could have found the essential elements of aggravated murder proven beyond a reasonable doubt.

{¶12} Mr. Ivery next argues that the State presented insufficient evidence to support his murder conviction because it failed to establish that he purposely killed Justin. Section 2903.02(A) governs murder and provides that "[n]o person shall purposely cause the death of another[.]" Given this Court's determination that the State presented sufficient evidence to support his aggravated-murder conviction, we likewise determine that the State presented sufficient evidence to support Mr. Ivery's murder conviction. *See State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 36 (noting that murder is a lesser-included offense of aggravated murder, and that "[t]he sole difference is that prior calculation and design is absent from murder.").

{¶13} Next, Mr. Ivery argues that the State presented insufficient evidence to support his felony-murder conviction. Section 2903.02(B) governs felony murder and provides that "[n]o

person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not [voluntary manslaughter or involuntary manslaughter.]" The predicate offense in this case was felonious assault under Section 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Section 2903.11(D)(1)(a) provides that felonious assault is a first or second degree felony depending upon whether the victim "is a peace officer or an investigator of the bureau of criminal identification and investigation[.]" Either way, "[e]vidence that a defendant fired a gun in a person's direction is sufficient evidence that the defendant acted knowingly for the purpose of a felonious assault conviction." *State v. Fox*, 10th Dist. Franklin No. 17AP-295, 2018-Ohio-501, ¶ 14.

{¶14} Here, the State presented evidence demonstrating that Mr. Ivery fired his gun in Justin's direction, that Justin was shot twice in the torso, and that he died as a result of those wounds. Viewing this evidence in a light most favorable to the State, this Court concludes that a rational trier of fact could have found the essential elements of felony murder proven beyond a reasonable doubt. To the extent that Mr. Ivery has separately challenged his felonious-assault conviction based upon the State's alleged failure to prove the required mens rea, we likewise reject that argument.

{¶15} Lastly, Mr. Ivery argues that the State presented insufficient evidence to support his attempted-murder conviction. Sections 2923.02(A) and 2903.02(A) govern attempted murder and provide that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in * * * [murder.]" "When a person fires a gun into a group of people,

one can infer intent to cause death." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 23.

{¶16} Here, Mr. Ivery fired his gun in a crowded bar. The bullets struck and/or grazed several bar patrons. Viewing this evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of attempted murder proven beyond a reasonable doubt. *See Hubbard* at ¶ 19-24 (holding that sufficient evidence existed to support the defendant's attempted-murder conviction when the State presented evidence indicating that the defendant fired five shots in rapid succession toward a group of people, killing one person); *State v. Banks*, 10th Dist. Franklin No. 01AP-1179, 2002-Ohio-3341, ¶ 26 (holding that sufficient evidence existed to support the defendant's attempted-murder conviction when the State presented evidence indicating that the defendant fired a gun randomly into a crowded bar, injuring one patron and paralyzing another).

{¶17} To the extent that the arguments contained in Mr. Ivery's first assignment of error challenge the weight, not the sufficiency, of the evidence, he has not developed arguments within his first assignment of error to support a manifest-weight challenge. This Court, therefore, will not consider those arguments. *See State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 41 (declining to address an underdeveloped argument that was beyond the scope of the captioned assignment of error).

{¶18} In light of the foregoing, Mr. Ivery's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE VERDICTS IN THIS CASE FOR AGGRAVATED MURDER, MURDER, AND ATTEMPTED MURDER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶19} In his second assignment of error, Mr. Ivery argues that his convictions for aggravated murder, murder, and attempted murder were against the manifest weight of the evidence. He also argues that his prior appellate counsel rendered ineffective assistance by failing to develop an argument in this regard in his prior appeal. For the reasons that follow, this Court disagrees.

{¶20} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶21} Importantly, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In sifting through conflicting evidence presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness." *State v. Jimenez*, 9th Dist. Medina No. 18CA0017-M, 2019-Ohio-1693, ¶ 25. "This Court has consistently held that '[w]e will not overturn a conviction as being against the manifest weight of the evidence

simply because the trier of fact chose to believe the State's version of events over another version.'" (Alteration sic.) *Jimenez* at ¶ 25, quoting *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶22} The crux of Mr. Ivery's manifest-weight argument is that he did not have the mens rea required to be convicted of aggravated murder, murder, and attempted murder. Instead, he argues, the evidence shows that he acted recklessly, and that he was convicted because of the repeated references to Justin being an Akron police officer. He asserts that he simply returned to the bar after leaving because he forgot his chicken wings, and that he fired his gun in self-defense. He provided testimony in this regard at trial. He also asserts that, to the extent that any of his arguments in his first assignment of error relate to the manifest-weight, not the sufficiency, of the evidence, this Court should evaluate those arguments under the manifest-weight standard.

{¶23} As previously noted, the jury was "free to believe or disbelieve any, or all, of the testimony from each witness[,]" and this Court will not overturn Mr. Ivery's convictions simply because the jury chose to believe the State's version of the events. *Jimenez* at ¶ 25. The State presented evidence indicating that Tiffany told the bartender to bring Mr. Ivery his check and a box for the chicken wings he had ordered. According to the bartender, Mr. Ivery said "I don't want these fucking wings[,]" and pushed them to the side. He then left the bar and returned about eight minutes later, stating that he was "not alone anymore[,]" lifting his shirt several times to reveal a gun tucked into his waistband. The State presented further evidence indicating that Mr. Ivery fired his gun several times after Justin and other bar patrons approached him in an attempt to take his gun from him. Two of those shots struck Justin in the torso, killing him. Having reviewed the record and the arguments presented, this Court cannot say that Mr. Ivery has

established that the jury clearly lost its way in finding him guilty of aggravated murder, murder, and attempted murder. Accordingly, Mr. Ivery's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

PURSUANT TO THE DEFENDANT'S RIGHT TO DUE PROCESS AND EQUAL PROTECTION, THE TRIAL COURT EMPLOYED THE WRONG LEGAL STANDARD FOR EXAMIN[IN]G THE SUITABILITY OF A JUROR, THEREBY ENTITLING THE DEFENDANT TO A NEW TRIAL[.]

{¶24} In his third assignment of error, Mr. Ivery argues that the trial court violated his constitutional rights by erroneously removing a juror for cause. He also argues that his prior appellate counsel rendered ineffective assistance by failing to develop an argument in this regard in his prior appeal. For the reasons that follow, this Court disagrees.

{¶25} "The Revised Code and the Rules of Criminal Procedure both include catchall provisions allowing prospective jurors to be challenged for cause if they are 'unsuitable for any other cause to serve as a juror.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 83, quoting R.C. 2945.25(O) and Crim.R. 24(C)(14). "A trial court's application of this provision is reversible only for an abuse of discretion." *Id.* "An abuse of discretion occurs if the trial court acted in a manner that was arbitrary, unreasonable, or unconscionable." *State v. Huguley*, 9th Dist. Summit No. 28322, 2017-Ohio-8300, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶26} This Court explained the trial court's removal of the juror at issue in our prior decision as follows:

[A]fter the trial had commenced, the State moved to remove an African American juror for cause because monitoring of Ivery's jail calls indicated that the juror approached a woman who had been in the courtroom and inquired about a friend she was with the day before. The State argued that the juror violated the trial court's admonition to not communicate with anyone in the courtroom. The trial court questioned the juror about the interaction, who initially denied that he had communicated with anyone. After the trial court provided additional information,

the juror eventually admitted that he had talked to the woman, but indicated it had nothing to do with the case; he was only inquiring about the woman's friend in a flirtatious manner.

The trial court determined that the juror's failure to be forthright with information about the interaction, including the fact that he only admitted to the interaction after the trial court confronted him with additional information, indicated that the juror was "deceptive and that he lied to the Court * * *." The trial court made clear that this was not a preemptory challenge and was "not an issue of race" that implicated *Batson*. The trial court then found that the "juror * * * violated the Court's order about contacting people outside of the courtroom and * * * got caught lying to the Court." It, therefore, removed the juror from the case for that reason.

*Ivery*, 2018-Ohio-2177, at ¶ 20-21.

{¶27} Mr. Ivery argues that the trial court failed to consider whether the juror at issue could still serve as an impartial juror, and cites Section 2945.25(B) in support of his position. That Section provides that a juror in a criminal case may be challenged for cause if the juror "is possessed of a state of mind evincing enmity or bias toward the defendant or the state[.]" R.C. 2945.25(B). That Section further provides that:

no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial[.]

*Id.* Mr. Ivery also argues that the trial court erroneously applied the less-stringent standard applicable to peremptory challenges, and not the higher standard applicable to challenges for cause. Having reviewed the record, this Court disagrees. This is not a situation contemplated under Section 2945.25(B) wherein a juror previously expressed a bias, and then the trial court did not further examine the juror to determine if that juror could still render an impartial verdict. Instead, as the trial court made clear on the record, the trial court removed the juror for cause on the basis that the juror violated its admonition to not communicate with anyone in the courtroom, and then lied to the court about doing so. Under these facts, this Court cannot say that the trial

court abused its discretion when it removed the juror at issue for cause. Mr. Ivery's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON RECKLESS HOMICIDE[.]

{¶28} In his fourth assignment of error, Mr. Ivery argues that the trial court committed plain error by not instructing the jury on reckless homicide. He also argues that his prior appellate counsel rendered ineffective assistance by failing to develop an argument in this regard in his prior appeal. For the reasons that follow, this Court disagrees.

{¶29} We begin our review by addressing the plain-error standard. Criminal Rule 52 provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "There are three requirements to finding plain error. First, there must be an error. Second, the error must be obvious. Lastly, the error must have affected the outcome of the trial." (Internal citations omitted.) *State v. Proctor*, 9th Dist. Summit No. 26740, 2013-Ohio-4577, ¶ 4. "Courts should notice plain error only with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 37. We now turn to the law regarding reckless homicide and the issuance of jury instructions.

{¶30} "[R]eckless homicide is a lesser included offense of murder[.]" *State v. Elwell*, 9th Dist. Lorain No. 06CA008923, 2007-Ohio-3122, ¶ 39. Section 2903.041 governs reckless homicide and provides that "[n]o person shall recklessly cause the death of another[.]" "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a

substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶31} "[A] defendant is entitled to a jury instruction on a lesser included offense when the evidence presented at trial reasonably supports both an acquittal of the crime charged and a conviction of the lesser included offense[.]" *State v. Powe*, 9th Dist. Summit No. 21026, 2002-Ohio-6034, ¶ 58. "However, some evidence is not enough; sufficient evidence must be presented that would allow a jury to reasonably reject the greater offense and find the defendant guilty of the inferior-degree offense." *Id.* "When making this determination, the evidence must be viewed in a light most favorable to the defendant." *Id.*

{¶32} Here, Mr. Ivery maintained at trial – and again on appeal – that he acted in self-defense. As this Court stated in our prior decision, "Ivery testified that he fired his gun because he feared for his life when the three men surrounded him and reached for his gun. He testified that he thought the men would 'take it and kill [him,]' so he 'defend[ed] [him]self.'" *Ivery*, 2018-Ohio-2177, at ¶ 13. Notwithstanding, he argues that the jury could have found that he acted recklessly by bringing a gun into the bar and indiscriminately firing it four times without aiming to hit a particular person.

{¶33} Having reviewed the record, including Mr. Ivery's trial testimony, this Court concludes that the evidence presented at trial was not sufficient to allow the jury to reasonably reject the murder charge and find Mr. Ivery guilty of reckless homicide. *See State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 30-31 (holding that the trial court did not commit plain error by not instructing the jury on reckless homicide when the defendant admitted that he shot the victim in self-defense); *State v. McCurdy*, 1st Dist. Hamilton No. C-020808, 2003-Ohio-5518, ¶ 15 (holding that the defendant was not entitled to a reckless-homicide jury instruction

when he conceded that he shot the victim in self-defense). The trial court, therefore, did not commit plain error by not instructing the jury on reckless homicide. Mr. Ivery's fourth assignment of error is overruled.

III.

{¶34} Mr. Ivery's assignments of error are overruled. This Court confirms our decision in *State v. Ivery*, 9th Dist. Summit No. 28551, 2018-Ohio-2177, and affirms the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

EDDIE SIPPLEN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.